and we'll hear from Mr. Corey. Good morning. Michael Corey on behalf of Kevin Crandell. I would like to spend my time today addressing just two of the three issues we raised in our briefing and the first is the challenge to the sufficiency of the evidence and then secondarily address our argument that the court erred in not granting a mistrial as a result of what we believe were prejudicial statements made on cross-examination by the government, the cross-examination of Kevin Crandell, the defendant. Now this, as you know, this is a section 7201 willful attempted evasion of payment case and the key document in this case, this is the crux of the government's indictment and case against Kevin Crandell was a form 433A which is submitted as part of the process to try and get a payment plan. So I'm going to talk first for a minute, if I can, about how that form was prepared and what the evidence and testimony at trial was about the preparation of that form. Has Dr. Crandell ever paid back the money that was included in that, in just that form? I'm sorry, I'm not following the question. A million dollars, right? It was that form, or I forget exactly what that form indicated. It didn't say he wasn't going to pay anything back. No ma'am. He owed almost a million at the time, I believe. Right, and he owed around $500,000 in taxes and then he had another half a million in interest and penalties. That's right, but I mean, did he pay any of that back yet? No ma'am, he has not. But our that's misdemeanor failure to pay or misdemeanor failure to file. In this case, this is a tax evasion case which requires a willful, overt affirmative act to essentially conceal his ability to pay from the government, as opposed to an omission. Well, the form says you must disclose all personal assets, and that would include his valuable gun collection and any bank accounts. Yes ma'am, but the way this form was prepared, well, you have to look at this from our standpoint in the context of the whole situation. Blue Tax was working with Dr. Crandall starting in early 2011 all the way through 2016. They had all of the information that was to properly fill out that form. There's no evidence or testimony that Kevin Crandall concealed anything from Blue Tax. This isn't a classic, in my view, spees-type tax evasion case, because there is no attempt to hide assets or keep anything from anybody. In fact, he told the government, he told the revenue officer, Leroy Laws, he told him a year before this form was even submitted, which was prepared by Blue Tax, he told him what his income was when he got paid. There was never any dispute that Kevin Crandall was paid $40,000 a month. So, it's a little bit, from our standpoint, it's a little bit disingenuous to take a form that's filled out by a tax professional. I was signed by your client. It was, but that's... He knows how to read. He does, but he also has, he doesn't know how to, he doesn't know what's required or what should be included on that form if they just send it to him. There's no evidence they actually, when they send it to him, that they send him the two pages of instructions that tell you what you're supposed to do. This is a form that the testimony at trial was, was Blue Tax filled out this form based on information they had about Dr. Crandall, and they had, they'd done, at that point, they'd already filed six years of tax returns. But he hadn't paid him. But that's a different crime. I, look, he should have paid. There's no, I mean, that's what makes him, you know, he was a very unsympathetic defendant. Isn't this your closing argument to the jury? I mean, what is this about, you know, we're supposed to defer to the jury finding unless we can't, basically. Well, but, and I certainly understand that. The jury made its decision, but this was a confusing case, and in this case, there's no... I mean, I know you're trying to argue the law, but it sounds to me like you're sort of arguing the facts here. Well, Leroy Law, I mean, the jury, there is no testimony that there was any intentional omission or concealment by Kevin Crandall of any of these, anything that they allege. Leroy Law's own cross, the revenue... Well, he gave the number, he gave the smaller numbers to Blue Tax to put in there. Isn't that a problem? No, because in 2014, the revenue officer of Leroy Law's is levying his accounts, so he's still getting $35,000 to $40,000 a month into Kevin Crandall, M.D., Inc., but he had $125,000 taken out once in June, I mean, I think it was $75,000 in June of 2014, and then in November 2014, he has $40,000, roughly $40,000, so there's $125,000 out of that $400,000 in income that was taken out before he could ever pay himself, so there is a reason, there's no explanation that there's nothing for a jury to infer any nefarious conduct or any concealment from the fact that Kevin Crandall had only paid himself $129,000 in November when the IRS was taking his money, and he told them, I mean, Blue Tax knew, everybody knew he was making $35,000 to $40,000 a month, but he can't pay himself what he doesn't have, so this idea that there's something false about... Hey, but when you are the one giving yourself the money, I mean, that's a little bit different from, you know, working for General Electric or something. It is different, I agree with that, but at the same time... I mean, it's a lot different. The law offices of, you know, Michael Corey would be very different from, I think the largest place in the country is Kirkland & Ellis or somebody like that. Those are two different places that might be paying you in terms of how you get paid, right? There is, but you still don't have, I mean, everything is tracked here. This is not a month later, he turns in a W-2 that shows he made $210,000, so they are taking one document that he didn't prepare, that he didn't put the information on. But he signed. He did sign it. And he requested the lower number. Well, it was not a request for... I thought he instructed the lady at the accounting firm to put in the lower number. No, ma'am. No, ma'am. I thought there was... No testimony to that effect. He provided information in October and November that was requested. The testimony was totally that they made the decision about what was included on that form. Was she called by the defense or the prosecution? By the prosecution. Yes. And she explained, I mean, I think an important part of her testimony, it's on page 97 of the transcript. And she's on direct examination by the government. And she's being asked about this very issue, you know, why are you going along with this number when you know what's... I mean, why are you going along with this number when there's differences, you know, out there? And she says, her answer was, well, when people have their own corporations, sometimes they just produce pay stubs on a regular basis, reoccurring, but without actually paying themselves that amount. And sometimes that happens, and so they have to go back in and revise it. And she's talking about the differences in his pay stubs. He sets up his pay stubs, but he gets garnished in November. He can't pay himself what he normally would pay himself. So his income is definitely showing less on that date. There's no evidence that there's anything fraudulent about that or that he's trying to hide anything when he did that, especially when he's... Is it not correct that when Bluetech sent him the preliminary form, draft of the 433A, he told them his income had declined, the draft was inaccurate, and they should put $11,783? No, he didn't. There's no testimony where he told them that they should, that I recall, where he said that they should put... I'm looking at notes on it, so I'm not... Yeah, but he was, he did say that his income had declined, but that's because the only explanation in the whole record about why his income had declined is because they had garnished $125,000. The revenue officer had gotten that money, or $120,000 or $125,000. So there's no, I mean, your classic tax evasion case requires a situation where something is deliberately being concealed. In this case, he has told everybody what his income is. He sent a letter a year before to Leroy Laws on December 1, the same day this is sent. He sends, he does a mortgage application, I mean, a credit application where he discloses what his income... When he filled out the business questionnaire that he gave to Bluetech, and this is, it's the page ID number 838, but on November 10, 2014, he fills out a business questionnaire, and on page 7 of that questionnaire, which is number 844, he told Bluetech my gross receipts from sales is $35,000 and that the gross wages and salaries for that business, which is his business, he's in control of it, is $10,000 to $20,000 a month. So this is the information Bluetech's had at that time. He's not hiding it from them. He's disclosing it. Now, he should have been paying. There's no question about that. But this idea that he's responsible for, or number one, that it's fraudulent, that he understated his income, I don't think is supported by the evidence. And then to the extent that it is an error... Well, if he was making the money, like $250,000 to $400,000 a year, even if it was garnished, he had to represent what he was making, right? Well, he did. Bluetech knew what he was making, and he correctly represented on his W-2 what he was making a month later. I mean, it's not as if the IRS didn't have all this information. I mean, they had all the information. It's not like the whole time he's saying, I don't have any money. He's telling them, I have money. I need a payment plan. There's no cash. There's no money going somewhere else. There's no payments to nominees. He's telling them, and Bluetech fills out one form where they base his income on what he had drawn to date in November 2014, and that's... I'm looking at ROA 287, and it does say that. It's Payen's testimony saying, upon speaking to Dr. Crandall and showing him the initial 433, he stated this was not his income, and so that's how we arrived at the $11,000. The question was the $11,783. I believe in that. She's talking about, in that part you're referencing, she's talking about the fact that he said that his income was lower, and they knew why his income was lower. It's because it was being garnished. I mean, what he was able to pay... But he was the one who directed it. That was the question I asked, and you acted like I was wrong on that, so I just wanted you to know I wasn't misquoting ROA 287. If I can, I would like to move briefly to the trial court's denial of the motion for mistrial. On cross-examination, Kevin Crandall, the government asked questions of him, and it's on 271 of the transcript. And the first question was a little bit convoluted, but it refers to the time period at issue in this case, which is 2006 to 2012, and the question ends with, now 2022, you still haven't paid. There was an objection to that question, and it was sustained. Now, if you would, just visualize Kevin Crandall's on the stand, and he's being asked that by an AUSA that he still hasn't paid anything since 2012. Well, when a defense lawyer has to object to that, the jury knows what that means. They know that it means it's a true statement. My experience with juries is they follow judges, and if the judge is instructing them that's a wrong question, they get mad at the person asking the question. I mean, I did not have experience. I had about 200 jury trials as a state district court judge, and I didn't really have experience where they were disregarding my. . . I obviously didn't sit in on their decision making, but that was my understanding. Well, and I think that there are a lot of times that the instructions are followed, but in this case the second question after an objection was already sustained, which is you have not filed a personal tax return since 2014, have you? That same situation, the jury knows it's true, and I think that changes the way a jury looks at somebody. I think there's no way to. . . Well, not to. I mean, they do tend. . . I'm not saying they always do. I'm not saying they're perfect, but they do tend to follow what the judges say. Well, I would respectfully disagree with that. That's not been my experience. I think when somebody is told something that negative about somebody, that changes their opinion, just like if you hear somebody has abused their children or anything else. You're looking at that. They're assuming it's true, and I think it's a complete assumption to assume that they're just able to disregard that, because to me it's just like if this had been a bank robbery trial and they were asking the question, you hadn't done anything to pay the money back for that bank robbery you did in 2014, and then they come back and say, in fact, you've robbed seven more banks since then. I mean, I don't think there's any way to say that that's. . . to have any confidence that the jury, when in a USA, the government, is up there in the defense law. What's your best case for the notion that although the court sustained the objection and instructed the jury not to consider it, that that wasn't enough? I realize there are certainly things that can happen where it isn't enough. I'm not saying that never happens. It's just not super common. Right, and that's the problem. That's certainly the problem. I mean, I'll acknowledge that. . . Because it's not supposed to be super common. So tell me how you are. . . your case is different from the typical where the instruction and the sustaining of the objection are enough. Well, I would. . . I mean, obviously there's the Ninth Circuit case, United States v. Davenport, but there's no case that's super specific. And this was dealing with a witness. But where the prosecution wafts an unwarranted innuendo into the jury box, that's a violation. And you can't assume. . . I guess my basic position is that that's a pretty serious allegation. There's nobody in my mind who would want to be on the witness stand and have the government of the United States, the AUSA, inject deliberately. And I know my time's out. Yes, it is. I'll finish this thought. I mean, you've already made your point. You think it's very prejudicial. Yes, ma'am. Thank you. Thanks a lot. You have an opportunity for Mr. Dobbs. Were you the trial. . . Yes, Your Honor. Good. Attorney. May it please the Court. Your Honor, my name's Clay Dobbs. I'm with AUSA, the Northern District of Mississippi. I presented this case to the grand jury. So how do you address whether the jury would follow what the judge instructed on those improper questions? Well, the law is that you assume that the jury will follow the instructions given by the court. The instructions were not objected to by either party. The question was never answered. It was. . . The assertion in the question is 100% true that he had not filed a personal tax return. So it's not as if I'm making some kind of assertion to the jury that's not true. Dr. Crandall, in his direct testimony, he just gave the impression of something that just absolutely is not true, that he's just minding his own business, waiting for the IRS to tell him what to do. And that is simply not the case. Because he continued to not file personal tax returns. Now, I did not get into this in my case in chief. I certainly could have. . . I thought about whether I should try to get into that with, say, the case agent, which would be 404B, and chose not to do that. So he certainly is absolutely entitled to testify, but he also doesn't have to testify. And if he had not testified, it would have never come up at all. So when he testifies and he says, all I've wanted to do since I hired Blue Tax, since I talked to Mr. Laws, since I talked to the IRS agent, is somebody to give me a payment plan so I can pay my taxes. That is not true. And so I was not trying to ask a question that I . . . You were trying to rebut the notion that all he wanted to do was pay his taxes. That's correct. And I certainly was not trying to ask a question that I knew would get . . . No, we're not looking at the question of whether you all should be sanctioned for asking the question. The question is whether that's a mistrial question. And my point with your opponent is that has to be really pretty high up for the reason you said, that we're supposed to believe the juries believe it. And my experience is that they do, but . . . That's correct. It's a high bar to show an unanswered question. Because in state court, they actually afterwards talk to the lawyers about it. Right. So there's a lot of information here. But anyway, go on. Which would be nice to do that maybe sometimes. I might be a little afraid of what I'd find out if we got to talk to the jury. But it's an unanswered question, and even if the question is improper, it certainly doesn't rise to the point of warranting a mistrial. And what's your best case on that? The case is . . . I believe it's . . . United States v. Stanford is a Fifth Circuit case from 2016 that talks about the jurors are presumed to follow the court's instructions. I think the Tomlin case, which is in our brief, explains the difference between trying to offer it in direct, in your case in chief, or in the cross-examination of another witness, like, for example, his expert, as opposed to actually cross-examining the defendant. He brings his character into issue. Did you say he had opened the door? Did I say that before I asked the question? I did not say that before I asked the question. But that's where you're arguing here, basically. That's right. It was proper impeachment based on his direct testimony. Because he said all he ever wanted to do. So that takes you to the past. All he ever wanted to do, and then he said until now, which is right up to the point of the trial. So as far as the actual facts of the case, I want to make something really clear. There was ample evidence to show that Dr. Crandall himself lied on the form on purpose, not Blutax. Now, we can argue about whether Blutax is competent, incompetent, but Dr. Crandall is the one that manipulated this form. The 287? That's correct. The Roe 287 that I quoted, that's who you're relying on? That's correct. So there's a questionnaire that Blutax sends to Dr. Crandall, and it asks for things like personal assets. It asks for your expenses. It does not ask you to fill in the blank for the monthly income. It says send your most recent pay stubs. Now, in this case, Dr. Crandall, in around 2010, sets up a corporation, actually a C corporation, to take in his monthly income. And then he pays a salary out of that to himself. Now, nothing changes. He still just works in the ER. He works however many shifts. He gets paid every month. The taxes are totally his problem. Nothing is withheld. So he sends in the pay stubs, and when you look at the pay stubs he sent back to him, you can divide by the number of months, and you get this $17,000 figure. And so that's what they put into the form. And then they send him not the questionnaire but the actual form 433A that was never submitted. And what Ms. Payan testified to is she said, I went over the form with Dr. Crandall, and he said the form was wrong. The income was too high. Now, we've got the emails back and forth where he's sending in emails back to Blutax, and he sends another set of pay stubs to Blutax. Now, what doesn't make any sense at all is that the first set of pay stubs said he made, I think, $136,000 through like the month of September or the month of August. The second set of pay stubs said he made $129,000 through the month of November. Now, that makes no sense at all. That means he would have had to make negative income. Well, I guess to me the difference is like I don't have any control on how much I get paid by the government. But if I was running the law offices of Katharina Haynes, I would have a lot of control over how much money I put in my bank account, right? And isn't he closer to the law offices of Katharina Haynes than United States Circuit Judge Katharina Haynes? Absolutely. And really, the pay stubs are just on paper. He's doing it himself. He acknowledged in his testimony that he did not have an accountant that kept his books. He's just sitting on his computer on QuickBooks, and he can manipulate his paychecks on paper to change the amount on the pay stubs. And that's what the evidence shows. It's different from like just getting a salary at some law firm or government or somewhere else. Absolutely. And because he has complete control of the bank accounts, and he's using the bank accounts as his personal bank accounts. I mean, if he wants money out of the bank account, he just takes money out of the bank account. So in reality, he's not honoring the difference between the C Corporation and his personal bank account at all. And the $11,000 figure, he changed the pay stubs, which changed the income on the 433A. She sent the new one back to him. He said, okay, this is correct. He signed it. And then it was submitted to Mr. Laws. Now, when he shows a negative income, negative net income on that form, what Mr. Laws testified to is that means you're a hardship case. What you're saying is you can't pay, that you want an installment plan of zero. And this is a man that makes $40,000 a month, month after month after month after month after month. Now, what about the argument, though, that everybody knew? Everybody knew this. The IRS knew this. Blue Tax knew this. So how can it be a lie if everybody knows it's a lie? Well, Mr. Laws immediately knew the form was false, but that doesn't give you permission to lie on the form. Just because, I mean, you could ask the question, why didn't Blue Tax push harder? Why didn't they investigate more and say, no, you can't do this? But he submitted the form, and he interacted with Blue Tax and told them to change the form with a lower income number. Mr. Laws sees the form immediately, recognizes that it's wrong, because he's aware of how much money he's been making, because there's actually a business tax case on Kevin Crandall, Inc., which is completely different. So the IRS was never misled. Is that what you're saying? Oh, they were absolutely misled on the 433 Act. What would they be misled about if they knew all this? He's saying that my personal income at the end of the month is negative $350. But you just said that the fellow, Mr. Laws, said he knew immediately that this was a lie. He knew the form was false when he saw it. And so that's when he starts to process referring it to the criminal side of IRS. How can he deal with somebody that's just going to lie?  You know, you could ask why wasn't he charged with other crimes. I think that comes up in a lot of cases. Ultimately, the decision was made, in this case, to charge him only with the one count of tax evasion. And this is not an excuse at all. That decision comes from DOJ tax to my office, so I wasn't going to argue with him about that. I guess it keeps it simple. It's an evasion of payment. And any affirmative act that has any indication to mislead or conceal satisfies that. So there was no question that he actually manipulated the form and the way he interacted with Blue Tax. And he went over the form. And he also admitted, in addition to the income, he admitted his gun collection. The form actually says personal collections, parentheses, coins, guns, et cetera. So, I mean, it says on the Form 433A, gun collections. It wasn't included. He had a gun collection worth about $50,000. And he also did not include the business bank accounts on the Form 433A. So there's, on the personal side, any bank account that he's got a personal interest in should be included. Well, his bank accounts on the Form 433A showed that he had about $500 in the bank. When in reality, I mean, I think there was about $75,000 in debits in his business bank account when he submitted this form. So the idea that he has $500 in the bank is completely wrong. He also, his W-2 showed he made $17,000 a month. His 941, which is a quarterly payroll form, showed he made $30,000 a month. He filled out a loan application that showed he made $22,000 a month. And just a few days after he submitted the form, he wrote himself a check for $40,000 out of the Kevin Crandall, Inc. bank account. Now, Judge Aycock actually found in her order that there was enough evidence of a willful act even without the form because of the way he had these two business accounts and he was moving money around and he was commingling funds with personal expenses out of his business bank account. So CHBK Incorporated was supposed to be one of these kind of shield your assets situations, but the only thing he ever put into it, he said, was a couple of cars. He never even put his house into it. So thousands of dollars was going into CHBK, Inc. every month, and he was spending personal expenses out of both of those accounts all the time. And if it's a C corporation, it's not like an LLC or some kind of sole proprietorship. Any money that comes out of a C corporation, it's either an expense or it's going to be income to the person because the C corporation pays its own taxes and then you pay your personal taxes. So if that money comes out for personal expenses, that's actually like a dividend to him. So all this financial mess Judge Acock found was enough to show an affirmative act even without the 433A, but certainly with the 433A, it is sufficient to support the conviction. I did find a couple of other cases that could be a little closer in preparation for argument, which always seems to happen to me. United States v. Gonzalez, 58F3rd, 506. That's a 10th Circuit case from 1995, and it talks about a Form 433. It's not exactly clear which Form 433 it is. And then United States v. Brimberry, 961F2nd, 1286, 7th Circuit, 1992. And that involves Forms 433A and 433B, which 433B is the business side, and that's what he was talking about. Mr. Corey was talking about the business questionnaire where he talked about his business income, but a 433B was never actually filed in this case. So the evidence, there was more than enough evidence for the jury to find him guilty in this case. Certainly, viewing the evidence in light of the verdict and taking all the inferences in the evidence in favor of the verdict, certainly there's more than enough evidence to support the conviction, support the court's order in this case denying the judgment of acquittal in the new trial. And if the court doesn't have any other questions, I won't cede the rest of my time. No, sir. Thank you. Thank you. Thank you. First I want to talk about briefly the court asked about whether or not the door was open. And in my view, the door wasn't even close to open, and we're talking about the mistrial and the reason for the questions. Was that argued? I don't want to take it up unless it was argued before the court that way. What do you mean? Did he try to justify that question on the ground that your client opened the door? I believe you asked that question, Judge Jones, of him, of whether the door was open. Yeah, and I don't want to go into it unless this was also what happened at trial. I guess I'm not following that. But either the door was open or it wasn't. My argument is only that the classic way the door is open is if Kevin Crandall had got on the witness stand and told the jury, hey, I've been paying my taxes ever since, I've been filing my returns, then that might make what happened from 2014 forward relevant, because that would be a direct contradiction. But this idea that the government can question him in such a way to try and inject that intentionally in front of the jury, which is actually evidence of subsequent crimes, that's a different scenario. And as far as on the evidence, just briefly, on page Mr. Davs talked about the expenses and loans and things like that. There was no testimony at trial by anyone that there was anything actually improper about the way loans or expenses were done by Blue Tax or by Kevin Crandall. On the expenses, IRS agent Walker testified on cross-examination. It's page 191 of the transcript, and he was being asked about the income and expenses, and he says he was asked the question, and the IRS accepted all those expenses. They've not challenged them. They accepted the returns that were filed from 2006 to 2014, and is it correct? And his answer was, that is correct. So those expenses, the expenses he actually reported to the IRS weren't challenged. They were accepted correct. So to come back and try and say there was evidence in front of the jury that he was manipulating expenses is not supported by the record. The goal the whole time in this case, and there was no dispute because Kirsten Payne, the government's witness from Blue Tax said, and it's on page 124 of the transcript, she was asking the whole time was to try and get an installment plan, and her answer was yes. And she was asked on the same page, and Blue Tax was hired to try and get him an installment plan in 2012, and the testimony was that that never changed. There's never been any testimony that he was going to be able to not pay anything. The government was garnishing him. They knew what his income was. It was just a matter of coming to an agreement as to what that payment plan would be if he would qualify for it. Is this restitution amount ordered by the court? Is that net of the amount that was garnished? Yes, but that, well, I believe that is correct. I think that number is that the restitution amount was approximately 500 plus. That number was post-2014, so after that garnishment. I see. But he did pay. The record was that he did pay a little over $600,000 from 2014 forward. Has anything been paid while he's in jail? I'm sorry, what's that, ma'am? Has anything been paid while he's in jail? Tax returns have been filed, but I don't believe he has any ability to earn any income, and I don't know what collection efforts have been there. Thank you. All right, sir, we have your argument. Thank you.